# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Gail Feser, on behalf of herself and all others
similarly situated in the District of Columbia

          Plaintiff,

vs.

AU OPTRONICS CORP.; AU OPTRONICS
CORP. AMERICA; CHI MEI
OPTOELECTRONICS CO., LTD.; CHI MEI
OPTOELECTRONICS USA, INC.;
CHUNGHWA PICTURE TUBES, LTD.;
FUJITSU LIMITED, INC.; FUJITSU
AMERICA, INC.; HANNSTAR DISPLAY
CORPORATION; HITACHI, LTD.; HITACHI
DISPLAYS, LTD.; HITACHI AMERICA,
LTD.; IDTECH CO., LTD; IDTECH USA,
INC.; IPS ALPHA TECHNOLOGY, LTD.;
LG.PHILIPS LCD CO., LTD.; LG.PHILIPS
LCD AMERICA, INC.; MATSUSHITA
ELECTRIC INDUSTRIAL CO. LTD.;
PANASONIC CORPORATION OF NORTH
AMERICA; MITSUBISHI ELECTRIC
CORPORATION; MITSUBISHI ELECTRIC &
ELECTRONICS USA, INC.; NEC
ELECTRONICS CORPORATION; NEC
ELECTRONICS AMERICA, INC.; NEC LCD
TECHNOLOGIES, LTD.; SAMSUNG
ELECTRONICS COMPANY LTD.;
SAMSUNG ELECTRONICS AMERICA, INC.;
SANYO ELECTRIC CO., LTD.; SANYO
NORTH AMERICA CORPORATION; EPSON
IMAGING DEVICES CORPORATION; SEIKO
EPSON CORPORATION; EPSON AMERICA,
INC.; EPSON ELECTRONICS AMERICA,
INC.; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; S-LCD
CORPORATION; SYNTAX-BRILLIAN
CORP.; TOSHIBA CORPORATION;
TOSHIBA AMERICA INC.; TOSHIBA
MATSUSHITA DISPLAY TECHNOLOGY
CO., LTD.; and JOHN DOES 1-100.

          Defendants.

CIVIL ACTION NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S ADDRESS**

Gail Feser
4000 Tunlaw Rd., NW
Apt. 500
Washington, DC 20007

**DEFENDANTS' ADDRESSES**

AU Optronics Corp. America
9720 Cypresswood Drive, Suite 241
Houston, TX 77070

       C T CORPORATION SYSTEM
       818 W 7TH ST.
       LOS ANGELES, CA 90017

    **Agent for Service**

AU Optronics Corporation
K.Y. (Kuen-Yao) Lee, Chairman/CEO
No. 1, Li-Hsin Rd. 2
Hsinchu Science Park
Hsinchu 30078 Taiwan, R.O.C.

Chi Mei Optoelectronics Co. Ltd.
Ching-Siang Liao, Chairman
No. 3, Sec. 1, Huanshi Rd.
Southern Taiwan Science Park
Sinshih Township,Tainan County, 74147 Taiwan, R.O.C.

Chi Mei Optoelectronics USA Inc.
101 Metro Drive, Suite 510
San Jose, CA 95110

       JUNICHI ISHII
       956 WALLACE DR.
       SAN JOSE, CA 95120

    **Agent for Service**

Chunghwa Picture Tubes Ltd.
C. H. (Frank) Lin, Chairman/President
1127 Hopin Rd.
Padeh City
Taoyuan,Taiwan, R.O.C.

Epson America Inc.
Naoyuki Akikusa, Chairman
3840 Kilroy Airport Way
Long Beach, CA 90806

Epson Electronics America, Inc.
Craig Hodowski, CFO
2580 Orchard Parkway
San Jose, CA 95131

Epson Imaging Devices Corp.
Shuji Aruga, President
6925 Toyoshina Tazawa,
Azumino-Shi, Nagano Japan

Fujitsu America Inc.
Masuo Tanaka, Chairman
1250 E. Arques Ave.
M/S 124
Sunnyvale, CA 94085

Fujitsu Limited Inc.
Hiroaki Kurokawa, President
Shiodome City Center
1-5-2 Higashi-Shimbashi
Minato-ku
Tokyo 105-7123 Japan

Hannstar Display Corp.
Mr. Yu-Chi Chiao, Chairman/CEO
12th Fl., 480, Rueiguang Rd.
Neihu Chiu
Taipei, 114 Taiwan, R.O.C.

Hitachi America Ltd.
Masahide Tanigaki, President/CEO
2000 Sierra Point Parkway
Brisbane, CA 94005

Hitachi Displays Ltd.
Kazuhiro Mori, President
AKS Bldg. 5F
6-2 Kanda Neribei-cho 3
Chiyoda-ku
Tokyo 101-0022 Japan

Hitachi Ltd.
Etsuhiko Shoyama, Chairman/CEO
6-6, Marunouchi 1-chome
Chiyoda-ku
Tokyo 100-8280 Japan

Idtech Co. Ltd.
Noritatsu Hají, President/CEO
Nansei Yaesu Bldg. 3F,
2-2-10 Yaesu
Chuo-ku
Tokyo 104-0028 Japan

Idtech USA, Inc.
Eric Raymond
101 Metro Drive Suite 510
San Jose, CA 95110

Ips Alpha Technology, Ltd.
Fumiaki Yonai, President
3732 Hayano
Mobara-shi, Chiba 297-0037 Japan

LG.Philips LCD Co., Ltd.
Young-Soo Kwon, President/CEO
20 Yoido-dong
Youngdungpo-gu
Seoul 150-721 South Korea

LG.Philips LCD America, Inc.
Y. Jun, President
150 East Brokaw Road
San Jose, CA 95112

Matsushita Electric Industrial Co. Ltd.
Fumio Ohtsubo, President
1 Rockefeller Plaza
Ste. 1001
New York, NY 10020

Mitsubishi Electric & Electronics USA, Inc.
Akira Tasaki, President/CEO
5665 Plaza Drive
P.O. Box 6007
Cypress, CA 90630

Mitsubishi Electric Corp.
Setsuhiro Shimomura, President/CEO
Tokyo Building
2-7-3 Marunouchi
Chiyoda-ku
Tokyo 100-8310 Japan

NEC Electronics America, Inc.
Yuichi Kawakami, President/CEO
2880 Scott Blvd.
Santa Clara, CA 95050-2554

NEC Electronics Corp.
Toshio Nakajima, President/CEO
1 Chase Manhattan Plaza
40th Floor
New York, NY 10081

NEC LCD Technologies, Ltd.
Kazuo Okuno, President
1753 Shimonumabe
Nakahara-ku
Kawasaki, Kanagawa 211-8668 Japan

Panasonic Corporation of North America
Yoshihiko (Yoshi) Yamada, Chairman/CEO
1 Panasonic Way
Secaucus, NJ 07094

Samsung Electronics America, Inc.
Dong-Jin Oh, President/CEO
105 Challenger Rd.
Ridgefield Park, NJ 07660

Samsung Electronics Co. Ltd.
Kun-Hee Lee, Chairman/CEO
250, 2-ga, Taepyong-ro 2-ga
Jung-gu
Seoul 100-742 South Korea

Sanyo Electric Co. Ltd.
Toshimasa Iue, President/Director
5-5,Keihan-Hondori 2-chome
Moriguchi City, Osaka 570-8677 Japan

Sanyo North America Corp.
2055 Sanyo Ave.
San Diego, CA 92154

      CSC - LAWYERS INCORPORATING SERVICE
      PO BOX 526036
      SACRAMENTO, CA 95852-6036

      **Agent for Service**

Seiko Epson Corp.
Seiji Hanaoka, President
3-3-5 Owa
Suwa, Nagano 392-8502 Japan

Sharp Corporation
Katsuhiko Machida, President
Sharp Plaza
Mahwah, NJ 07430

Sharp Electronics Corp.
Toshihiko Fujimoto, Chairman/President
1 Sharp Plaza
Mahwah, NJ 07430

S-LCD Corp.
Won-Kie Chang, President and CEO
Tanjung, Asan-City
ChungCheongMan-Do, South Korea

Sony Corp. of America
C/O SCA Legal Dept.
550 Madison Ave.
27th Floor
New York, NY 10022

Sony Corp.
Howard Stringer, Chairman/CEO
550 Madison Ave.
27th Floor
New York, NY 10022

Sony Electronics Inc.
Ryoji Chubachi, CEO
16450 W. Bernardo St
San Diego, CA 92127

Syntax-Brillian Corp.
Vincent F. Sollitto Jr., Chairman/CEO
1600 N. Desert Drive
Tempe, AZ 85281

Toshiba America, Inc.
Hideo Ito, President
1251 Avenue of the Americas
Suite 4110
New York, NY 10020

Toshiba Corp.
Atsutoshi Nishida, President/CEO
1-1 Shibaura 1-chome
Minato-ku
Tokyo 105-8001 Japan

Toshiba Matsushita Display Technology Co. Ltd.
Katsuji Fujita, President
Rivage Shinagawa
1-8, Konan 4-chome
Minato-ku
Tokyo 108-0075 Japan

## CLASS ACTION COMPLAINT

Plaintiff, Gail Feser, hereby brings this action on behalf of herself and all other similarly situated persons and entities who indirectly purchased Thin-Film Transistor Liquid Crystal Displays ("LCD") and products containing LCD during a period beginning no later than January 1, 2002, and continuing until the present. Plaintiff seeks federal injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1 and damages and other relief from the LCD manufacturers listed above ("Defendants") for violations of the District of Columbia Antitrust Act, D.C. Code §§ 28-4501, *et seq.*; the Consumer Protection Procedures Act, D.C. Code § 28-3901, *et. seq.*; and state common law. Plaintiff, upon personal knowledge as to her own acts and status, and upon information and belief as to all other matters, alleges the following:

### INTRODUCTION

1.     This case arises out of a long-running conspiracy extending from January 1, 2002 and continuing until the present (the "Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing prices, allocating market share, and committing other unlawful practices designed to inflate the prices of LCD and products containing LCD sold indirectly to Plaintiff and other purchasers throughout the United States, including in the District of Columbia.

2.     Defendants and their co-conspirators have formed an international cartel to illegally restrict competition in the LCD market, targeting and severely burdening consumers in the District of Columbia. During the Class Period, the conspiracy has affected billions of dollars of commerce for products commonly found in households and businesses throughout the United States, including the District of Columbia. Defendants' conspiracy has included

- 1 -

communications and meetings in which Defendants agreed to eliminate competition and fix the

prices and allocate markets for LCD.

3.      The charged combination and conspiracy consisted of a continuing agreement,

understanding, and concert of action among Defendants and their co-conspirators, the substantial

terms of which were to fix, stabilize, and maintain prices, allocate markets and customers, and to

coordinate price increases of LCD in the District of Columbia.

4.      The acts by Defendants in furtherance of the conspiracy have included the

following wrongful conduct and horizontal agreements:

(a)     participating in meetings and conversations in which Defendants
        and their co-conspirators discussed and agreed to prices for LCD;

(b)     participating in meetings and conversations in which Defendants
        and their co-conspirators allocated markets and customers for
        LCD;

(c)     participating in meetings and conversations in which Defendants
        and their co-conspirators discussed and agreed to refrain from
        engaging in competitive bidding or to submit complementary and
        non-competitive bids for particular contracts to supply LCD and
        products containing LCD to various consumers;

(d)     exchanged sales and customer information for the purposes of
        monitoring and enforcing adherence to the agreements reached;

(e)     issuing price announcements, price quotations, and general price
        increases in accordance with the pricing and market allocation
        agreements reached; and

(f)     facilitating, effectuating, implementing, monitoring, and
        concealing the contract, combination, and conspiracy to raise the
        prices of LCD sold.

## **JURISDICTION & VENUE**

5.      Plaintiff brings this class action pursuant to the District of Columbia Antitrust

Act, D.C. Code §§ 28-4501, *et seq.* and the Consumer Protection Procedures Act, D.C. Code §

28-3901, *et. seq.*

6.      This Complaint is also filed under Section 16 Clayton Act, 15 U.S.C. § 26, to enjoin Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states. Venue is proper in the United States District Court for the District of Columbia pursuant to 15 U.S.C. § 15 and § 22 and 28 U.S.C. § 1391, as the Defendants reside, transact business or are found within this District, and/or a substantial part of the events giving rise to Plaintiff's claims arose in this District.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiff's injunctive relief claims brought under the Clayton Act, 15 U.S.C. § 26.  Jurisdiction is also proper under 28 U.S.C. § 1367 as all other claims arise from the same case or controversy as the Clayton Act claim.

9.      Personal jurisdiction comports with due process under the United States Constitution and the District of Columbia's long-arm statutes.

10.      Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

(a)      transacted business in the District of Columbia;

(b)      contracted to supply or obtain services or goods in the District of Columbia;

(c)      availed themselves intentionally of the benefits of doing business in the District of Columbia;

- 3 -

(d)     produced, promoted, sold, marketed, and/or distributed their products or services in the District of Columbia and, thereby, have purposefully profited from their access to the District of Columbia's markets;

(e)     caused tortious damage by act or omission in the District of Columbia;

(f)     caused tortious damage in the District of Columbia by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(g)     committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in the District of Columbia to Plaintiff and class members while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(h)     engaged in a conspiracy with others doing business in the District of Columbia that caused tortious damage in such jurisdiction; and

(i)     otherwise had the requisite minimum contacts with the District of Columbia such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

11.     Plaintiff Gail Feser is a resident of the District of Columbia. In addition, a substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, combination, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within the District of Columbia, including, among other things, the indirect sale of LCD to Plaintiff and other members of the class at supra-competitive prices.

12.     As a result of the manufacture, distribution, delivery and sale of LCD products to indirect purchasers within the District of Columbia, Defendants, directly or through their

subsidiaries, affiliates or agents, obtained the benefits of the laws of the District of Columbia and the markets of the District of Columbia for their products.

**PARTIES**

**A.    Plaintiff**

13.    Plaintiff Gail Feser is a resident of the District of Columbia. During the time period covered in this Complaint, Plaintiff indirectly purchased LCD from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a result, Plaintiff paid supra-competitive and artificially inflated prices for LCD and has been injured by reason of the illegal conduct alleged herein.

**B.    Defendants**

14.    Defendant AU Optronics Corporation is a Taiwanese corporation with its principal place of business at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C. Defendant AU Optronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

15.    Defendant AU Optronics Corporation America is a wholly owned subsidiary of Defendant AU Optronics Corporation and is incorporated in California with its principal place of business at 9720 Cypresswood Drive, Suite 241, Houston, Texas 77070. Defendant AU Optronics Corporation America produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants AU Optronics Corporation America and AU Optronics Corporation are referred to collectively as "AU Optronics."

16.    Defendant Chi Mei Optoelectronics Co., Ltd. is a Taiwanese corporation with its principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Park, Tainan, 74147

- 5 -

Taiwan, R.O.C. Defendant Chi Mei Optoelectronics Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

17. Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics Co., Ltd. and is incorporated in Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant Chi Mei Optoelectronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Co., Ltd. are referred to collectively as "Chi Mei Optoelectronics".

18. Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese corporation with its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan, R.O.C. Defendant Chunghwa produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

19. Defendant Fujitsu Limited, Inc. is a Japan corporation with its principal place of business at Shiodome City Center 1-5-2 Higashi Shimbashi, Minato-ku, Tokyo, 105-7123 Japan. Defendant Fujitsu Limited, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

20. Defendant Fujitsu America, Inc., is a wholly owned subsidiary of Defendant Fujitsu Limited, Inc. and is incorporated in California with its principal place of business at 1250 E. Arques Ave., M/S 124 Sunnyvale, California 94085. Defendant Fujitsu America, Inc.

produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Fujitsu America, Inc. and Fujitsu Limited, Inc. are referred to collectively as "Fujitsu".

21.    Defendant Hannstar Display Corporation ("Hannstar") is a Taiwanese corporation with its principal place of business at 12th Fl., No. 480, Rueiguang Road, Neihu Chiu, Taipei, 114 Taiwan, R.O.C. Defendant Hannstar produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

22.    Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

23.    Defendant Hitachi Displays, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. with its principal place of business at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku, Tokyo 101-0022 Japan. Defendant Hitachi Displays, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

24.    Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Hitachi America, Ltd., Hitachi Displays, Ltd. and Hitachi, Ltd. are referred to collectively as "Hitachi".

25.     Defendant International Display Technology Co., Ltd. is a wholly owned Japanese subsidiary of Chi Mei Optoelectronics with its principal place of business at Nansei Yaesu Bldg., 3F, 2-2-10, Yaesu, Chuo-ku, Tokyo 104-0028 Japan.  Defendant International Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

26.     Defendant International Display Technology USA, Inc. is a wholly owned subsidiary of International Display Technology Co., Ltd. and is incorporated in California with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant International Display Technology USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.  Defendants International Display Technology USA, Inc. and International Display Technology Co., Ltd. are referred to collectively as "IDTech".

27.     Defendant IPS Alpha Technology, Ltd. ("IPS Alpha") is a wholly owned subsidiary of Hitachi, Ltd., with its principal place of business at 3732, Hayano, Mobara-shi, Chiba 297-0037 Japan.  It was created as a joint venture of Hitachi, Ltd., Toshiba Corporation and Matsushita Electric Industrial Co, Ltd.  Defendant IPS Alpha produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

28.     Defendant LG.Philips LCD Co., Ltd. is incorporated in South Korea with its principal place of business at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721 South Korea. Defendant LG.Philips LCD Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during

the Class Period.

29.    Defendant LG.Philips LCD America, Inc. is a wholly owned subsidiary of
LG.Philips LCD Co., Ltd. and is incorporated in California with its principal place of business at
150 East Brokaw Road, San Jose, California 95112.  Defendant LG.Philips LCD America, Inc.
produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United
States, including in the District of Columbia, during the Class Period.  Defendants LG.Philips
LCD America, Inc. and LG.Philips LCD Co., Ltd. are collectively referred to as "LG.Philips".

30.    Defendant Matsushita Electric Industrial Co., Ltd. (d/b/a as "Panasonic") is a
Japanese corporation with its principal place of business at 1006, Kadoma, Kadoma City, Osaka
571-8501 Japan.  Defendant Matsushita Electric Industrial Co., Ltd. produced, promoted, sold,
marketed, and/or distributed LCD to consumers throughout the United States, including in the
District of Columbia, during the Class Period.

31.    Defendant Panasonic Corporation of North America is a wholly owned subsidiary
of Matsushita Electric Industrial Co., Ltd. and is incorporated in Delaware with its principal
place of business at 1 Panasonic Way, Secaucus, New Jersey 07094.  Defendant Panasonic
Corporation of North America produced, promoted, sold, marketed, and/or distributed LCD to
consumers throughout the United States, including in the District of Columbia, during the Class
Period.  Defendants Panasonic Corporation of North America and Matsushita Electric Industrial
Co., Ltd. are collectively referred to as "Matsushita".

32.    Defendant Mitsubishi Electric Corporation is a Japanese corporation with its
principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310
Japan.  Defendant Mitsubishi Electric Corporation produced, promoted, sold, marketed, and/or
distributed LCD to consumers throughout the United States, including in the District of

Columbia, during the Class Period.

33.    Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned subsidiary of Defendant Mitsubishi Electric Corporation. Mitsubishi Electric & Electronics USA, Inc. is incorporated in Delaware with its principal place of business at 5665 Plaza Drive Cypress, California 90630. Defendant Mitsubishi Electric & Electronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Mitsubishi Electric & Electronics USA, Inc. and Mitsubishi Electric Corporation are referred to collectively as "Mitsubishi".

34.    Defendant NEC Electronics Corporation is incorporated in Japan with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668 Japan. Defendant NEC Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

35.    Defendant NEC Electronics America, Inc. is a wholly owned subsidiary of NEC Electronics Corporation and is incorporated in California with its principal place of business at 2880 Scott Boulevard, Santa Clara, California 95050. Defendant NEC Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

36.    Defendant NEC LCD Technologies, Ltd. is a Japanese corporation with its principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8666 Japan. Defendant NEC LCD Technologies, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of

Columbia, during the Class Period. Defendants NEC LCD Technologies, Ltd., NEC Electronics America, Inc. and NEC Electronics Corporation are referred to collectively as "NEC".

37.    Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250, 2-ga, Taepyung-ro Chung-gu, Seoul, South Korea. Defendant Samsung Electronics Company, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

38.    Defendant Samsung Electronics America, Inc. is incorporated in New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Defendant Samsung Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Samsung Electronics America, Inc. and Samsung Electronics Company, Ltd. are collectively referred to as "Samsung".

39.    Defendant Sanyo Electric Co. Ltd. is a Japanese corporation with its principal place of business at 5-5, Keihan-Hondori 2-chome, Moriguchi City, Osaka 570-8677 Japan. Defendant Sanyo Electric Co. Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

40.    Defendant Sanyo North America Corp. is incorporated in Delaware with its principal place of business at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo North America Corp. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Sanyo North America Corp. and Sanyo Electric Co. Ltd. are collectively

- 11 -

referred to as "Sanyo".

41.     Defendant Epson Imaging Devices Corporation is a Japanese corporation with its principal place of business at 6925 Toyoshina Tazawa, Azumino-Shi, Nagano, Japan. Defendant Epson Imaging Devices Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

42.     Defendant Seiko Epson Corporation is a Japanese corporation with its principal place of business at 3-3-5 Owa, Suwa, Nagano 392-8502 Japan. Defendant Seiko Epson Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

43.     Defendant Epson America, Inc. is a wholly owned subsidiary of Seiko Epson Corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, California 90806. Defendant Epson America, Inc. manufactured, sold and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

44.     Defendant Epson Electronics America, Inc. is a wholly owned subsidiary of Seiko Epson Corporation with its principal place of business at 2580 Orchard Parkway, San Jose, California 95131. Defendant Epson Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Epson Electronics America, Inc., Epson America, Inc., Epson Imaging Devices Corporation, and Seiko Epson Corporation are collectively referred to as "Seiko".

45.     Defendant Sharp Corporation is a Japanese corporation with its principal place of

business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522 Japan. Defendant Sharp Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

46.    Defendant Sharp Electronics Corporation is a wholly owned subsidiary of Sharp Corporation and is incorporated in New York with its principal place of business at Sharp Plaza, Mahwah, New Jersey 07430. Defendant Sharp Electronics Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period. Defendants Sharp Electronics Corporation and Sharp Corporation are referred to collectively as "Sharp".

47.    Defendant S-LCD Corporation ("S-LCD") is incorporated in South Korea with its principal place of business at Tanjung, Asan-City, ChungCheongMan-Do, South Korea. It is a joint venture between Samsung (50% plus one share) and SONY (50% minus one share). Defendant S-LCD produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

48.    Defendant Syntax-Brillian Corp. ("Syntax Brillian") is incorporated in Delaware with its principal place of business at 1600 N. Desert Drive, Tempe, Arizona 85281. Defendant Syntax-Brillian Corp. produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

49.    Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan. Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed LCD to consumers throughout the United States, including in the District of Columbia, during the Class Period.

50.    Defendant Toshiba America, Inc. is a wholly owned subsidiary of Toshiba

Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110

New York, New York 10020. Defendant Toshiba America, Inc. produced, promoted, sold,

marketed, and/or distributed LCD to consumers throughout the United States, including in the

District of Columbia, during the Class Period. Defendant Toshiba America, Inc. and Toshiba

Corporation are referred to collectively as "Toshiba".

51.     Defendant Toshiba Matsushita Display Technology Co., Ltd. is a Japanese joint

venture between Toshiba and Matsushita with its principal place of business at Rivage

Shinagawa, 1-8 Konan, 4-chome, Minato-ku, Tokyo 108-0075 Japan. Defendant Toshiba

Matsushita Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed

LCD to customers throughout the United States, including in the District of Columbia, during the

Class Period.

52.     Whenever reference is made to any act, deed, or transaction of any corporation,

the allegation means that the corporation engaged in the act, deed, or transaction by or through

its officers, directors, agents, employees, or representatives while they were actively engaged in

the corporation's management, direction, control, or business affairs. Moreover, Defendants

acted as each other's agents or joint venturers with respect to their conspiracy, and any

Defendant that is a subsidiary of a foreign parent acted as its parent company's agent for its

parent's United States LCD sales.

53.     The acts charged in this Complaint have been done by the aforesaid Defendants

and were ordered and performed by the aforesaid Defendants' officers, directors, agents,

employees or representatives while actively engaged in the management, direction, control or

transaction of said Defendants' business or affairs.

## ADDITIONAL DEFENDANTS

54.     As additional information may come to light, Plaintiff reserves the right to add other Defendants as they become known to her.

## CO-CONSPIRATORS

55.     Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made Defendants in this Complaint (the "Co-Conspirators") and presently unknown to Plaintiff, participated as co-conspirators in the violation alleged herein, and performed acts and made statements in furtherance of the conspiracy.

56.     The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants named herein as DOES 1 through 100 are unknown to Plaintiff at this time, and are therefore sued by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities of DOES 1 through 100 when they become known to Plaintiff.  Each of DOES 1 through 100 is in some manner legally responsible for the violations of law alleged herein.

57.     The acts charged in this Complaint as having been done by Defendants and the DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management of the Defendants' businesses or affairs.

## CLASS ACTION ALLEGATIONS

58.     This action is brought by Plaintiff on behalf of herself, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class ("the Class").  In particular, Plaintiff asserts that a class action is appropriate under Rule 23(b)(3).

59.     The Class is defined as:

All persons and entities residing in the District of Columbia who
indirectly purchased LCD or products containing LCD
manufactured and sold by one or more of the Defendants during
the Class Period. Excluded from the Class are: all federal, state, or
local governmental entities; Defendants' subsidiaries and affiliates;
all persons who purchased LCD directly from any Defendant or
from any other manufacturer of LCD.

60.     Although the exact size of the Class is unknown, the total number of Class

members is in the thousands as most District of Columbia consumers have purchased LCD

and/or products containing LCD. Based upon the nature of the trade and commerce involved,

joinder of all Class members would be impracticable.

61.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly

and adequately protect the interests of the Class. Plaintiff has no conflict with any other Class

member and has retained competent counsel experienced in class action and antitrust litigation.

62.     Common questions of law and fact exist, including:

(a)     whether Defendants conspired with each other and others to
fix, raise, stabilize or maintain the prices of LCD;

(b)     whether Defendants' acts were unfair or deceptive;

(c)     whether the combination or conspiracy caused the prices of
LCD and products containing LCD to be higher than they
would have been in the absence of Defendants' conduct;

(c)     the operative time period for the conspiracy;

(d)     whether Defendants' conduct caused injury to the business
or property of Plaintiff and the Class members, and if so,
the appropriate measure of damages;

(e)     whether Defendants' conduct violated D.C. Code §§ 28-
4501, *et seq.* and D.C. Code § 28-3901, *et. seq.*;

(f)     whether Defendants actively concealed the violation
alleged herein; and

(g)     the appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class members and predominate over any questions affecting only individual Class members.

63.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action vehicle provides an efficient method for enforcement of the rights of Plaintiff and the Class members, and such litigation can be fairly managed. Plaintiff knows of no unusual problems of management or notice.

64.     It is desirable for the claims of Plaintiff and the Class members to be consolidated into a single proceeding to provide all claimants with a forum in which to seek redress for the violations of District of Columbia laws.

65.     The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure.

## FACTUAL ALLEGATIONS

66.     LCD is a thin, flat display device consisting of pixels aligned in front of a reflector or source of light. An LCD generally consists of a mask of colored pixels and a layer of liquid crystal solution sandwiched between two panes of polarized glass. When an electric current is passed through the liquid crystals, the crystals react, creating electric fields. By manipulating the state of liquid crystals using electrical charges, the liquid crystals act like tiny shutters, opening or closing in response to the stimulus, thereby allowing light to pass through the colored pixels. As a result, the LCD is illuminated, thus creating an image.

67.     LCD technology was introduced during the early 1970s; however, they were used commercially for laptop computer screens during the late 1980s. Today, LCD are used in a variety of electronic products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and

digital music players.

68.    The LCD market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic, is characterized by high manufacturing costs, and has technological barriers to entry. The high barriers to entry are due to the capital-intensive nature of the display industry and the high volumes of production required to achieve economies of scale.

69.    According to reports, the worldwide market for LCD panels was worth $53 billion in 2004. Other estimates suggest that the market is worth approximately $70 billion. Most LCD panels are manufactured in Taiwan and South Korea. For the first quarter of this year, Taiwan accounted for 52.2% of the LCD panel shipments, while South Korea had a 37.4% share. Last year, South Korea led with a 48.8% share against Taiwan's 41.8% share.

70.    LG.Philips and Samsung have consistently been the industry's leading manufacturers. In 2005, LG.Philips captured a 21.4% market share of LCD panel production sized ten inches or larger, edging out Samsung, which had a 20.9% market share. Following closely behind were AU Optronics with 14.5%, Chi Mei Optoelectronics with 11.8%, and Chunghwa Picture Tubes with 7.3%. Thus far in 2006, however, Samsung appears to have overtaken LG.Philips as the largest manufacturer of LCD panels—a result of the joint venture operation with SONY to form S-LCD Corp. Trailing close behind is AU Optronics. With its acquisition of Quanta Display in 2006, the company's estimated market share rises to approximately 20.2%, according to industry experts.

71.    Prior to the Class Period, LCD prices in the United States decreased significantly. New competitors entered the LCD market during this period. Moreover, the increased manufacturing capacity resulting from newly constructed advanced generation factories and efficiency in production equipment and processes contributed to these price declines. The LCD

manufacturers' saw their profit margins squeezed from falling average selling prices. Prices had dropped so precipitously that producers were actually selling at production cost, without making any profit.

72.     These efficiencies did, however, allow for the increased use of finished LCD in computer monitors and laptop notebooks, flat panel televisions and cell phones. Upon information and belief, the average selling price of LCD rose significantly from 2003 to 2004 largely because of collusion among the Defendants. During this period, Defendants agreed to reduce supply in order to artificially raise prices.

73.     Defendants' collusion operated to stymie the decline in prices prior to 2003, such that they raised prices to supra-competitive levels. By 2003, prices climbed. For instance, the average price of LCD larger than 10 inches increased from $219 in the second quarter to $271 in the fourth quarter. At the end of 2003, the market was valued at $33 billon, a significant increase from $29 billion in 2002. This increasing average price of LCD continued to rise in 2004, hitting an all-time high. According to industry analysts, the market was valued at $36 billion in 2004. It was the collusive activity among the Defendants and their Co-Conspirators that kept the prices at supra-competitive levels and led to the increase in value of the overall LCD market.

74.     The LCD industry has undergone significant consolidation throughout the Class Period, leading to substantially fewer LCD manufacturers in the market. Examples of this consolidation include AU Optronics' acquisition of Quanta Display and the collaboration by industry leaders to create ventures such as S-LCD, Toshiba Matsushita Display Technology and Sanyo Epson Imaging Devices.

75.     The market for LCD products is large and steadily increasing in size. For example, shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007, which is

a 6.3% increase from the 145.2 million units shipped during the latter half of 2006, and is a 23.7% increase from the first half of 2006.

76.     The United States Department of Justice ("DOJ") recently launched an investigation into anticompetitive practices by LCD manufacturers.  On or about December 8, 2006, the DOJ subpoenaed Defendants LG.Philips, Samsung, Sharp and Chi Mei Optoelectronics.  A spokesperson for the DOJ confirmed that an investigation is underway in the LCD industry and that the DOJ is cooperating internationally with other antitrust authorities.  Several Defendants such as LG.Philips, Sharp, and Samsung have acknowledged publicly that the DOJ has subpoenaed them about the LCD investigation.

77.     Authorities in the European Union, Japan, South Korea and Taiwan have launched similar probes in coordination with the DOJ investigation.  On December 12, 2006, the European Commission confirmed that it had sent formal requests for information to a number of LCD producers.  Japan's Fair Trade Commission also confirmed that it is investigating allegations of price-fixing against LG.Philips, Samsung, AU Optronics, Sharp, Seiko Epson, Toshiba Matsushita Display Technology, NEC, Hitachi, and IPS Alpha.  LG.Philips publicly acknowledged on December 11, 2006, that it is being investigated in various countries: "[A]s part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission visited the offices of LG.Philips LCD in Seoul, Korea." Defendants Samsung, Sharp, and Chi Mei Optoelectronics have also confirmed that they are under investigation by competition regulators overseas.

78.     Price-fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the most recent conspiracy in the Dynamic Random Access Memory market and the alleged conspiracy in the Static Random Access Memory market.

Not surprisingly, many of the Defendants in these other cases are also implicated in this new

investigation of the LCD industry such as Defendants Samsung and Toshiba.

### TRADE AND COMMERCE

79.     The activities of Defendants and their Co-Conspirators, as described herein, were

within the flow of, were intended to, and did have a substantial effect on the commerce of LCD

throughout the United States, including the District of Columbia.

80.     During the Class Period, Defendants manufactured, sold, and shipped substantial

quantities of LCD to manufacturing businesses and consumers throughout the United States,

including the District of Columbia.  Those businesses resold and/or incorporated the LCD into

other products including, but not limited to, flat-panel televisions and computer monitors, laptop

computers, digital cameras, cell phones, microwaves, digital personal assistants, and digital music

players, and then sold those goods to businesses and consumers throughout the United States,

including the District of Columbia.

81.     The contract, combination, and conspiracy consists, upon information and belief,

of a continuing agreement, understanding, and concert of action between and among Defendants

and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and

maintain prices, allocate markets and customers, and to coordinate price increases for the sale of

LCD throughout the United States, including the District of Columbia.

82.     The acts in furtherance of the conspiracy by Defendants have included, on

information and belief, the following wrongful conduct and horizontal agreements:

> (a)     participating in meetings and conversations on a periodic
> basis during the Class Period, in which Defendants and
> their Co-Conspirators discussed and agreed to fix, raise,
> stabilize, and maintain the prices for LCD;
>
> (b)     participating in meetings and conversations on a periodic

basis during the Class Period, in which Defendants and
their Co-Conspirators discussed and agreed to allocate
markets and customers for LCD;

(c)    participating in meetings and conversations on a periodic
basis during the Class Period, in which Defendants and
their Co-Conspirators discussed and agreed to refrain from
engaging in competitive bidding, or to submit
complementary and non-competitive bids, for particular
contracts to supply LCD and/or products containing LCD
to various customers;

(d)    exchanging sales and customer information for the
purposes of monitoring and enforcing adherence to the
agreements reached;

(e)    issuing price announcements, price quotations, and general
price increases in accordance with the pricing and market
allocation agreements reached; and

(f)    facilitating, effectuating, implementing, monitoring and
concealing the contract, combination, and conspiracy to
raise the prices of LCD sold.

83.    For the purposes of formulating and effectuating the aforesaid contract,

combination, and conspiracy, Defendants and their Co-Conspirators did those things which they

conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

84.    The contract, combination, and conspiracy alleged herein had the following

effects, among others:

(a)    prices paid by Plaintiff and the Class members for LCD and
products containing LCD were fixed, raised, maintained,
and stabilized at artificially high and noncompetitive levels;

(b)    indirect purchasers of LCD and products containing LCD
were deprived of the benefits of free and open competition;
and

(c)    competition between and among Defendants and their Co-
Conspirators in the sale of LCD and/or products containing
LCD was unreasonably restrained.

85.    As a result, Plaintiff and the Class members have been injured in their businesses

and property in that they have not only been deprived the benefits of fair and open competition on the merits but have paid more for LCD and/or products containing LCD than they otherwise would have paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

86.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

87.    Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing and further effectively, affirmatively, and fraudulently Defendants' concealed their unlawful combination, conspiracy, and acts in furtherance thereof from Plaintiff and the Class members.

88.    Although Plaintiff exercised due diligence throughout the Class Period, she could not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of their activities.  Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which in fact, successfully precluded detection.

89.    Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of LCD to natural reasons such as seasonal ebb and flow and a highly competitive market.  Defendants also instructed their United States entities to offer similar false reasons to explain price increases to customers in the United States, including the District of Columbia.  In fact, those fluctuations were due to Defendants' periodic withholding of LCD supply to create an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

90.    Plaintiff and the Class members had no reason to disbelieve Defendants'

explanations of the pricing behavior of these products. Indeed, in some instances Defendants'

explanations involved proprietary or otherwise non-public information within Defendants'

exclusive control, leaving Plaintiff and the Class members without means to verify their

accuracy. Plaintiff did not know nor could she have known that Defendants' prices for LCD

were artificially inflated and maintained by virtue of Defendants' illegal price-fixing conspiracy

and that Plaintiff and the other Class members were paying higher prices for LCD and/or

products containing LCD than they would have paid in a competitive market.

91.    Plaintiff has exercised due diligence by promptly investigating the facts giving

rise to the claims asserted herein upon having reasonable suspicion of the existence of

Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent

permitted by law.

## COUNT I
### (Violation of the District of Columbia Antitrust Act)

92.    Plaintiff hereby adopts and incorporates by reference each of the preceding

paragraphs as if fully set forth herein.

93.    Beginning at least by January 1, 2002 and continuing until the present, the exact

date being unknown to Plaintiff, Defendants and their Co-Conspirators engaged in a contract,

combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of

D.C. Code §§ 28-4501, *et seq.* and substantially affecting trade or commerce throughout the

United States, including the District of Columbia.

94.    Each of the Defendants named herein, directly or indirectly and through affiliates,

dominated, controlled, manufactured, sold and/or distributed LCD throughout the United States,

including the District of Columbia.

95.    During the Class Period, Defendants have engaged in illegal, anticompetitive

practices including those described herein and/or combinations of capital, skill, and acts with others with the intent, purpose, and effect of creating and carrying out restrictions in trade and commerce; increasing the price and limiting and reducing the supply of LCD; and restraining trade and preventing competition in the relevant markets of LCD products, thereby enabling Defendants to perpetuate their monopoly.

96.    The aforesaid violations of D.C. Code §§ 28-4501, *et seq.* consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, LCD.

97.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following:

    a.  to fix, raise, maintain, and stabilize the price of LCD;

    b.  to allocate markets for LCD amongst themselves; and

    c.  to allocate amongst themselves the production of LCD.

98.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

    a.  price competition in the sale of LCD has been restrained, suppressed, and/or eliminated in the District of Columbia and throughout the United States;

    b.  prices for LCD sold by Defendants and their Co-Conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels in the District of Columbia and throughout the United States;

    c.   those who indirectly purchased LCD have been deprived of the benefit of free and

         open competition in the District of Columbia and throughout the United States.

99.     Plaintiff and the Class members paid supra-competitive and artificially inflated

prices for LCD and products containing LCD.

100.    As a direct and proximate result of Defendants' unlawful and anticompetitive

practices, including combinations and contracts to restrain trade and monopolize the relevant

markets, Plaintiff and the Class members have been injured in their business and property in that

they paid more for LCD than they otherwise would have paid in the absence of Defendants'

unlawful conduct. As a result of Defendants' violation of D.C. Code §§ 28-4501, *et seq.*,

Plaintiff, on behalf of herself and the Class members, seeks treble damages and the costs of suit,

including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to

D.C. Code § 28-4508.

**COUNT II**
**(Violation of the Consumer Protection Procedures Act)**

101.    Plaintiff hereby adopts and incorporates by this reference each of the preceding

paragraphs as fully set forth herein.

102.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by

affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the

prices at which LCD was sold, distributed, or obtained in the District of Columbia.

103.    The foregoing conduct constitutes "unlawful trade practices," within the meaning

of D.C. Code § 28-3904.

104.    Defendants' unlawful conduct had the following effects:

    a.   LCD price competition was restrained, suppressed, and eliminated throughout the

        United States, including in the District of Columbia;

b. LCD prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the United Stated, including in the District of Columbia;

c. Plaintiffs and members of the Class were deprived of free and open competition; and

d. Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for LCD.

105.    As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the District of Columbia Indirect Purchaser Class have been injured.  As a result of Defendants' violation of D.C. Code  §§ 28-3901, *et seq.,* Plaintiff, on behalf of herself and the Class members, seeks treble damages or $1,500 per violation, whichever is greater, payable to the consumer and reasonable attorneys' fees, and any additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice pursuant to D.C. Code  §§ 28-3905.

## COUNT III
### (Unjust Enrichment and Disgorgement of Profits)

106.    Plaintiff hereby adopts and incorporates by this reference each of the preceding paragraphs as fully set forth herein.

107.    Defendants benefited from their unlawful acts through the overpayment for LCD and products containing LCD by Plaintiff and the Class members.  Under common law principles of unjust enrichment it would be inequitable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiff and Class members and retained by Defendants.

108.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and

establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT IV
### (Violation of Sherman Act for Injunctive Relief)

109.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

110.    Beginning by at least January 1, 2002 and continuing until the present, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for LCD in the District of Columbia and the United States.

111.    Defendants' conduct in restraint of trade had the intent and effect of maintaining artificially high and anticompetitive prices of LCD and/or products containing LCD.

112.    Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

113.    Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing, and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

114.    It is in the best interest of the public to enjoin, pursuant to the Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

115.    Plaintiff and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and in violation of D.C. Code § 28-4501, *et seq.,* in the absence of injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Gail Feser, prays for judgment against all Defendants,

jointly and severally, and respectfully requests that the Court:

1.      Certify this action to proceed as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure and direct that reasonable notice be given to Class members;

2.      That the unlawful conduct, contract, conspiracy, or combination alleged herein be

adjudged and decreed to be:

  a.  An unlawful combination, trust, agreement, understanding, and/or concert of

      action in violation of the District of Columbia Antitrust Act D.C. Code §§ 28-

      4501 *et. seq.*, as set forth in Count I herein;

  b.  Unfair or deceptive trade practices substantially effecting trade or commerce

      in the District of Columbia in violation of the Consumer Protection

      Procedures Act D.C. Code § 28-3901, *et. seq.* as set forth in Count II herein;

  c.  Acts of unjust enrichment as set forth in Count III herein; and

  d.  In violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3.      Award Plaintiff and the Class members treble damages and costs of suit, including

reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant

to D.C. Code §§ 28-4508;

4.      Award Plaintiff and the Class members treble damages or $1,500 per violation,

whichever is greater, including reasonable attorneys' fees and any additional

relief as may be necessary to restore to the consumer money or property, real or

personal, which may have been acquired by means of the unlawful trade practice

pursuant to D.C. Code §§ 28-3905;

5.    Award Plaintiff and the Class members restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

6.    Award Plaintiff and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26, enjoining Defendants and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

7.    Award Plaintiff and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

8.    Grant such other, further or different relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims for which she is entitled to a jury trial.

Respectfully submitted,

*Soye Kim*

Jeff Bartos, D.C. Bar No. 435832
Soye Kim, D.C. Bar No. 471941
1625 Massachusetts Ave, NW
Suite 700
Washington, DC 20036
(202) 624-7400

David Boies, III, Esq.
Timothy D. Battin, Esq.
Ian Otto, Esq.
Nathan Cihlar, Esq.
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
(703) 764-8700

Dated: March 2, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GAIL FESER, on behalf of herself and all others similarly situated in the District of Columbia | See attached sheet |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | 11001 | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY)    Harris NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Jeffrey A. Bartos Soye Kim Guerrieri, Edmond, Clayman & Bartos, PC 1625 Massachusetts Ave., NW, Suite 700 Washington, DC 20036-2243 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**◉ A. Antitrust**

- ☒ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original
Proceeding
○ 2 Removed
from State
Court
○ 3 Remanded from
Appellate Court
○ 4 Reinstated
or Reopened
○ 5 Transferred from
another district
(specify)
○ 6 Multi district
Litigation
○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Unfair trade practices violating 15 U.S.C. Sec. 1, D.C. Code Secs 28-4501 et seq. and 28-3901 et seq.

**VII. REQUESTED IN COMPLAINT**   ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE  March 2, 2007   SIGNATURE OF ATTORNEY OF RECORD  *Joye Kim*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**PLAINTIFF'S ADDRESS**

Gail Feser
4000 Tunlaw Rd., NW
Apt. 500
Washington, DC 20007

**DEFENDANTS' ADDRESSES**

AU Optronics Corp. America
9720 Cypresswood Drive, Suite 241
Houston, TX 77070

> C T CORPORATION SYSTEM
> 818 W 7TH ST.
> LOS ANGELES, CA 90017
>
> **Agent for Service**

AU Optronics Corporation
K.Y. (Kuen-Yao) Lee, Chairman/CEO
No. 1, Li-Hsin Rd. 2
Hsinchu Science Park
Hsinchu 30078 Taiwan, R.O.C.

Chi Mei Optoelectronics Co. Ltd.
Ching-Siang Liao, Chairman
No. 3, Sec. 1, Huanshi Rd.
Southern Taiwan Science Park
Sinshih Township,Tainan County, 74147 Taiwan, R.O.C.

Chi Mei Optoelectronics USA Inc.
101 Metro Drive, Suite 510
San Jose, CA 95110

> JUNICHI ISHII
> 956 WALLACE DR.
> SAN JOSE, CA 95120
>
> **Agent for Service**

Chunghwa Picture Tubes Ltd.
C. H. (Frank) Lin, Chairman/President
1127 Hopin Rd.
Padeh City
Taoyuan,Taiwan, R.O.C.

Epson America Inc.
Naoyuki Akikusa, Chairman
3840 Kilroy Airport Way
Long Beach, CA 90806

Epson Electronics America, Inc.
Craig Hodowski, CFO
2580 Orchard Parkway
San Jose, CA 95131

Epson Imaging Devices Corp.
Shuji Aruga, President
6925 Toyoshina Tazawa,
Azumino-Shi, Nagano Japan

Fujitsu America Inc.
Masuo Tanaka, Chairman
1250 E. Arques Ave.
M/S 124
Sunnyvale, CA 94085

Fujitsu Limited Inc.
Hiroaki Kurokawa, President
Shiodome City Center
1-5-2 Higashi-Shimbashi
Minato-ku
Tokyo 105-7123 Japan

Hannstar Display Corp.
Mr. Yu-Chi Chiao, Chairman/CEO
12th Fl., 480, Rueiguang Rd.
Neihu Chiu
Taipei, 114 Taiwan, R.O.C.

Hitachi America Ltd.
Masahide Tanigaki, President/CEO
2000 Sierra Point Parkway
Brisbane, CA 94005

Hitachi Displays Ltd.
Kazuhiro Mori, President
AKS Bldg. 5F
6-2 Kanda Neribei-cho 3
Chiyoda-ku
Tokyo 101-0022 Japan

Hitachi Ltd.
Etsuhiko Shoyama, Chairman/CEO
6-6, Marunouchi 1-chome
Chiyoda-ku
Tokyo 100-8280 Japan

Idtech Co. Ltd.
Noritatsu Haji, President/CEO
Nansei Yaesu Bldg. 3F,
2-2-10 Yaesu
Chuo-ku
Tokyo 104-0028 Japan

Idtech USA, Inc.
Eric Raymond
101 Metro Drive Suite 510
San Jose, CA 95110

Ips Alpha Technology, Ltd.
Fumiaki Yonai, President
3732 Hayano
Mobara-shi, Chiba 297-0037 Japan

LG.Philips LCD Co., Ltd.
Young-Soo Kwon, President/CEO
20 Yoido-dong
Youngdungpo-gu
Seoul 150-721 South Korea

LG.Philips LCD America, Inc.
Y. Jun, President
150 East Brokaw Road
San Jose, CA 95112

Matsushita Electric Industrial Co. Ltd.
Fumio Ohtsubo, President
1 Rockefeller Plaza
Ste. 1001
New York, NY 10020

Mitsubishi Electric & Electronics USA, Inc.
Akira Tasaki, President/CEO
5665 Plaza Drive
P.O. Box 6007
Cypress, CA 90630

Mitsubishi Electric Corp.
Setsuhiro Shimomura, President/CEO
Tokyo Building
2-7-3 Marunouchi
Chiyoda-ku
Tokyo 100-8310 Japan

NEC Electronics America, Inc.
Yuichi Kawakami, President/CEO
2880 Scott Blvd.
Santa Clara, CA 95050-2554

NEC Electronics Corp.
Toshio Nakajima, President/CEO
1 Chase Manhattan Plaza
40th Floor
New York, NY 10081

NEC LCD Technologies, Ltd.
Kazuo Okuno, President
1753 Shimonumabe
Nakahara-ku
Kawasaki, Kanagawa 211-8668 Japan

Panasonic Corporation of North America
Yoshihiko (Yoshi) Yamada, Chairman/CEO
1 Panasonic Way
Secaucus, NJ 07094

Samsung Electronics America, Inc.
Dong-Jin Oh, President/CEO
105 Challenger Rd.
Ridgefield Park, NJ 07660

Samsung Electronics Co. Ltd.
Kun-Hee Lee, Chairman/CEO
250, 2-ga, Taepyong-ro 2-ga
Jung-gu
Seoul 100-742 South Korea

Sanyo Electric Co. Ltd.
Toshimasa Iue, President/Director
5-5,Keihan-Hondori 2-chome
Moriguchi City, Osaka 570-8677 Japan

Sanyo North America Corp.
2055 Sanyo Ave.
San Diego, CA 92154

    CSC - LAWYERS INCORPORATING SERVICE
    PO BOX 526036
    SACRAMENTO, CA 95852-6036

    **Agent for Service**

Seiko Epson Corp.
Seiji Hanaoka, President
3-3-5 Owa
Suwa, Nagano 392-8502 Japan

Sharp Corporation
Katsuhiko Machida, President
Sharp Plaza
Mahwah, NJ 07430

Sharp Electronics Corp.
Toshihiko Fujimoto, Chairman/President
1 Sharp Plaza
Mahwah, NJ 07430

S-LCD Corp.
Won-Kie Chang, President and CEO
Tanjung, Asan-City
ChungCheongMan-Do, South Korea

Sony Corp. of America
C/O SCA Legal Dept.
550 Madison Ave.
27th Floor
New York, NY 10022

Sony Corp.
Howard Stringer, Chairman/CEO
550 Madison Ave.
27th Floor
New York, NY 10022

Sony Electronics Inc.
Ryoji Chubachi, CEO
16450 W. Bernardo St
San Diego, CA 92127

Syntax-Brillian Corp.
Vincent F. Sollitto Jr., Chairman/CEO
1600 N. Desert Drive
Tempe, AZ 85281

Toshiba America, Inc.
Hideo Ito, President
1251 Avenue of the Americas
Suite 4110
New York, NY 10020

Toshiba Corp.
Atsutoshi Nishida, President/CEO
1-1 Shibaura 1-chome
Minato-ku
Tokyo 105-8001 Japan

Toshiba Matsushita Display Technology Co. Ltd.
Katsuji Fujita, President
Rivage Shinagawa
1-8, Konan 4-chome
Minato-ku
Tokyo 108-0075 Japan